IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FRANK MITCHELL,

    Plaintiff,

vs.　　　　　　　　　　　　　　　　　　Civil No. 09-890 MV/RLP

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

    Defendants.

### MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

Plaintiff, Frank Mitchell ("Plaintiff" herein), appeals from the final decision of the Commissioner of the Social Security Administration denying his applications for Disability income Benefits ("DIB" herein) and Supplemental Security Income benefits ("SSI" herein). This matter has been fully briefed by the parties (Docket Nos. 22, 24, 25) and has been referred to the undersigned for analysis and recommendation. (Docket No. 12).

**I.**　　**Procedural history**

Plaintiff filed an applications for DIB and SSI in October 2004, alleging a date of onset of disability of June 7, 2004. (Tr. 56, 242). These claims were denied on January 28, 2005. (Tr.29-33, 240). Plaintiff did not seek review of these denials.

Plaintiff worked for a total of four months in 2005, last working on October 31, 2005. (Tr. 131). He filed applications for DIB and SSI benefits on or about January 12, 2006.[2] These

---

[1] Pursuant to 28 U.S.C. §636(b)(1), within fourteen [14] days of being served with a copy of this Analysis and Recommended Disposition, either party may file written objections to such proposed Analysis and Recommended Disposition. A party must file any objection within the fourteen [14] day period if that party seeks appellate review of the Analysis and Recommended Disposition. Failure to timely file objection with the court will be deemed a waiver of appellate review. *Hill v. SmithKline Beecham Corp.,* 393 F.3d 1111,1114 (10th Cir. 2004).

[2] The administrative record does not contain applications for benefits bearing this date. However, denials referencing this filing date are contained in the record. (See Tr. 27-28, 240-241).

applications were denied initially and on reconsideration. (Tr. 27-28, 239-240). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ" herein), which was held on July 10, 2007. (Tr. 252-272). Plaintiff appeared and testified, represented by counsel. The ALJ also called a vocational expert to testify. (Id.). The ALJ issued a decision on August 16, 2007, denying Plaintiff's claims for benefits. (Tr. 11-21). Plaintiff sought review by the Appeals Council which declined review on July 20, 2009. (Tr. 6). The ALJ's August 16, 2007 decision is now before the court as the final decision of the Commissioner.

Plaintiff filed a third set of applications for benefits on or about April 29, 2008, while his request for review was pending before the Appeals Council. (See "filing date" reflected on Tr. 245). Based upon this third set of applications he was found "incapable per John Kowler, Ph.D." (Tr. 245). A letter dated December 28, 2008, states that he was awarded DIB and SSI benefits, with an onset of disability date of August 17, 2007, the day after the decision currently under review, and that he began receiving benefits as of February 2008. (Docket No. 13, Ex. 3).

Plaintiff has also filed a Motion for Limited Discovery before this court seeking to "propound discovery requests to the Commissioner to determine what evidence was submitted and developed in connection with his second (sic, third) claim and whether the Appeals Council did or did not consider that evidence as required by SSA-EM-99147." (Docket No. 21).

**II.   Background facts.**

Plaintiff was born on April 10, 1963. (Tr. 56). He went to the 3rd or 4th grade in school. (Tr. 169, 263). He is functionally illiterate in English and his native Navajo, but speaks some English. (Tr. 169, 266). He has prior work experience as a machinist, driller, carpenter, cement worker, road worker, welder's helper and water truck driver. (Tr. 77-82)

Plaintiff suffers from Meniere's Disease, a chronic, progressive disease of the inner ear, which

causes vertigo, hearing loss and tinnitus.[3] All treating physicians who have evaluated him have concurred in this diagnosis. (See e.g., 170-173, 153, 151,136). At the time Plaintiff's symptoms started in 2004 he was working as a welder's helper and forklift operator. (Tr. 131). His condition worsened over time, as the frequency of his episodes of vertigo increased, and he developed chronic headaches and atypical chest pain.. (See e.g., 170, 151, 138, 135, 139, 220-221). He last worked on October 31, 2005. (Tr. 131). His symptoms are such that he is prohibited from driving or operating hazardous machinery. (164, 218, 261, 19). There is no cure for Meniere's disease. (Tr. 136).

Plaintiff sought regular care for his condition, and took medications prescribed to treat it.

### III.    The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged date of onset of disability; that he suffers from severe impairments of Meniere's disease and headache; that his impairments do not meet the criteria for a listed impairment; that Plaintiff is not entirely credible; that he retains the residual functional capacity for "light work except that he can only perform postural maneuvers occasionally, has moderate limitations in concentration and cannot work at jobs requiring driving or the operation of machinery;" that he cannot return to his past relevant work, but that he retains the residual functional capacity for the jobs identified by the vocational expert which exist in significant numbers in the national economy.

### IV.    Standard of review

The standard of review in social security appeals is whether the Commissioner's final decision is supported by substantial evidence. **Thompson v. Sullivan**, 987 F.2d 1482, 1487 (10th Cir.

---

[3]Tr. 164; Meniere's disease is "disorder of the inner ear that causes severe dizziness (vertigo), ringing in the ears (tinnitus) and a feeling of fullness or congestion in the ear."Nat'l Inst. On Deafness & Other Communication Disorders, http://www.nidcd.nih.gov/health/balance/meniere.asp. (Last visited September 14, 2010).

1993) (citations omitted). Additionally, failure to apply the correct legal standards or to provide the court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal. **Washington v. Shalala**, 37 F.3d 1437, 1439 (10th Cir. 1994).

### IV.     SSA-EM-99147

Governmental agencies are allowed the discretion to grant additional procedural rights, even though reviewing courts generally may not impose such rights if the agency has not elected to grant them. **Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.**, 435 U.S. 519, 524, 98 S.Ct. 1197, 1202 (1977).

In December 1999, the Commissioner issues a new policy, SSA-EM-99147[4], which addresses situations like this, where a claimant who has an application pending before the Appeals Council, files a subsequent application for benefits which is granted during the pendency of the appeal of the prior claim. The policy provides that the new file is to be sent to the Appeals Council to determine if it contains new and material evidence relating to the time period that the ALJ was evaluating on the prior claim. SSA-EM-99147(B)(2).

It is clear that the evaluation of psychologist John Kowler was crucial Plaintiff being found disabled on his third application for benefits. Pursuant to SSA-EM-99147, this evidence was required to be sent to the Appeals Council for consideration in connection with the application under review.

Tenth Circuit case law requires that the Appeals Council consider properly submitted evidence that is new, material, and temporally relevant. **Threet v. Barnhart**, 353 F.3d 1185, 1191 (10th Cir.2003); see 20 C.F.R. § 404.970(b). "If the Appeals Council fails to consider qualifying new

---

[4]SSA-EM-00147, titled "Processing Subsequent Claims: New Policy Announced" can be found at www.ssas.com/newclaim.htm. It has been implemented through a variety of Program Operations Manual System provisions, such as SSA POMS DI 12045.027, 2001 WL 1932370; SSA POM DI 20101.25, 2002 WL 1878621; and SSA POMS SI 04040.25, 2002 WL 1879213.

evidence, the case should be remanded for further proceedings." **Threet**, 353 F.3d at 1191.

In this case, had the Appeals Council explicitly stated that it considered the evidence, there would be no error, even if the order denying review included no further discussion. See **Blea v. Barnhart** 446 F.3d 906, 912, note 2 (10th Cir. 2006); **Martinez v. Barnhart**, 444 F.3d 1201, 1207-08 (10th Cir.2006) (noting that analysis of new evidence by the Appeals Council would have been helpful, but was not required); cf. **Threet**, 353 F.3d at 1191-92 (reversing and remanding where Appeals Council gave no indication that it considered qualifying new evidence). The Appeals Council did not state that it had reviewed any additional evidence.

Accordingly, I find that the Commissioner, through his Appeals Council, failed to apply correct legal principles in evaluation of Plaintiff's claim. Accordingly, I recommend that this matter be remanded to the Commissioner, with instruction that he comply with, and document his compliance with SSA-EM-99147.

**V.     Credibility**

Because I recommend remanding this case to ensure compliance with SSA-EM-00147, I will briefly address an other issue claimant raises. Plaintiff also contends that the ALJ erred in assessing his credibility.

An ALJ's credibility determinations are generally treated as binding on review. **Talley v. Sullivan**, 908 F.2d 585, 587 (10th Cir.1990). "Credibility determinations are peculiarly the province of the finder of fact." **Diaz v. Sec'y of Health & Human Serv**., 898 F.2d 774, 777 (10th Cir.1990). Therefore, in reviewing the ALJ's credibility determinations, the court will usually "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." **Casias v. Sec'y of Health & Human Serv.**, 933 F.2d 799, 801 (10th Cir.1991). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion

in the guise of findings." **Huston v. Bowen**, 838 F.2d 1125, 1133 (10th Cir.1988).

The Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms. **Thompson v. Sullivan**, 987 F.2d 1482, 1488 (10th Cir.1993).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. **Gatson v. Bowen**, 838 F.2d 442, 447 (10th Cir.1988). Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment, **Luna v. Bowen**, 834 F.2d 161, 163 (10th Cir.1987) (citing **Frey** [**v. Bowen**], 816 F.2d [508,] 515 [(10th Cir.1987)]; **Nieto v. Heckler**, 750 F.2d 59 (10th Cir.1984)), that could reasonably be expected to produce the alleged disabling pain. **Luna**, 834 F.2d at 163; 42 U.S.C. § 423(d)(5)(A). This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in **Luna v. Bowen**, 834 F.2d 161 (10th Cir.1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling. **Musgrave v. Sullivan**, 966 F.2d 1371, 1375-76 (10th Cir.1992) (citing **Luna**, 834 F.2d at 163-64).

**Thompson**, 987 F.2d at 1488.

The Tenth Circuit has recognized a non-exhaustive list of factors which should be considered in evaluating symptoms. **Luna**, 834 F.2d at 165-66. These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

**Kepler v. Chater**, 68 F.3d 387, 391 (10th Cir.1995) (quoting **Thompson**, 987 F.2d at 1489).

The Commissioner has promulgated regulations suggesting factors to be considered in evaluating credibility which overlap and expand the factors stated by the court. Social Security

Ruling SSR 96-7p sets out seven factors considered in assessing credibility[5]. The ALJ specifically referred to these factors, and then recounted Plaintiff's testimony concerning his limitations: That he had daily headaches and dizziness; that medications helped but did not eliminate headaches; that pills made him sleepy; that he became dizzy very quickly when he tried to work at household chores; that he sometimes falls and had blackouts; that he almost hit a telephone pole while driving because he blacked out; that he was being evaluated for atypical chest pain, that as of May 2006 he cared for the family dogs and chickens, did a little housework, watched TV and sometimes played sports; that his doctor had told him not to work, that his wife had to check on him frequently. (Tr. 18).

The Court cannot determine what in the above cited testimony the ALJ found indicative of credibility or a lack thereof. This testimony is not juxtaposed to any evidence which would cast it in doubt.

> (The ALJ's) determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.
> ***
> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well- reasoned determination or decision.

Title II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7p, 1996 WL 374186, at *2 and *4 (S.S.A. July 2, 2996).

---

[5](1) Daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) factors that precipitate or aggravate symptoms; (4) type, dosage, effectiveness and side effects of medication taken to alleviate symptoms; (5) treatment other than medication received for relief of symptoms; (6) other measures used to relieve symptoms, and (7) any other factors concerning functional limitations and restrictions caused by symptoms. (Tr. 18).

Accordingly, this testimony is not considered in assessing whether the ALJ's credibility determination was supported by substantial evidence.

The ALJ specified two grounds for rejecting Plaintiff's credibility:

1) Although his symptoms started in 2003, Plaintiff worked construction until shortly after his alleged onset date; and

2) Plaintiff's condition was better after restarting HCTZ. (Tr. 18).

There is no evidence that Plaintiff worked after his alleged onset date of October 31, 2005. If the ALJ meant to say Plaintiff worked construction until shortly before his alleged onset date, that circumstance does not reflect adversely on Plaintiff's credibility since the ALJ found, and it is uncontroverted, that Plaintiff's condition is chronic and progressive. (Tr. 16).

HCTZ was initially prescribed in May 2004. (Tr. 170). On December 2, 2004, Dr. Michaels' medical note stated "Meniere's - no ∆ with ⇑ HCTZ," which the ALJ, interpreted as "no symptoms" with an increased dosage of HCTZ (Tr. 16).[6] Three weeks later, however, Plaintiff reported dizziness over the prior three days, and Dr. Brown diagnosed progressive vertigo. (Tr. 151). As of November 16, 2005, HCTZ no longer appeared on Plaintiff's list of prescribed medications. (See, e.g. 143, 142, 138, 135, 223, 227, 226, 224, 220). As of May 15, 2006, Plaintiff was reporting 3-4 dizzy spells a day, lasting for 10-15 minutes. (Tr. 129). In November 2006 Plaintiff reported dizziness so severe that he tripped, landing on his face and stomach. (Tr. 221). In February 2007 he reported dizziness even at night when lying down. (Tr. 220). Dr. Michaels restarted HCTZ on March

---

[6]Plaintiff has appended to his Motion to Reverse an excerpt from **Medical Heiroglyphs, Abbreviations and Symbols** by Avice H. Kerr, R.N., B.A., Clissold Books Inc., 1970, which indicates that the symbol used is properly interpreted as no "change" with increase of HCTZ. (Docket No. 22, Ex. 1). The Commissioner does not directly address this, other than to say there may be some discrepancies in the record. (Docket No. 24, p. 6).

2, 2007. (Tr. 219). On March 8 she charted: "Meniere's better after started HCTZ, Q (every) wk dizzy spells . . ." (Tr. 218). Accordingly, the record does support the ALJ finding that Plaintiff's condition improved in March 2007 when HCTZ was restarted.

While this one thread supports the ALJ's credibility determination, I find that standing alone, it does not constitute substantial evidence, particularly when the other stated basis for the ALJ's determination is not supported by the record.

## VI. Recommended Disposition

For these reasons I recommend that Plaintiff's Motion to Reverse (Docket No. 22) be granted, and that this matter be remanded to the Commissioner of Social Security for further proceedings consistent with the determinations made herein.

I further recommend that Plaintiff's Motion for Limited Discovery (Docket No. 21) be denied for the reasons stated in my prior Order denying Plaintiff's Motion to Supplement the Administrative Record (Docket No. 18, denying Docket No. 13).

Richard L. Puglisi<br>
Chief United States Magistrate Judge